May it please the Court and Counsel, Mark Thompson for the appellants Cheryl Jerry and Daniel Blanchard. I would like to reserve two minutes for rebuttal. As you know this matter arises from a due process hearing to enforce an individual education plan or to secure a free appropriate public education for Daniel Blanchard, a 12-year-old at the time with autism. Cheryl and Jerry Blanchard on behalf of Daniel Blanchard sought review of the administrative law judge's decision in a due process hearing. They sought that review in the Federal District Court for the Western District of Washington in Tacoma. In their complaint they alleged a violation of the IDEA or the Individuals with Disabilities Education Act and they sought the free appropriate public education secured by that act. They also sought recovery as mentioned under Section 1983, 1985, the Americans with Disabilities Act, the Rehabilitation Act and just general negligence. They brought these claims against the Morton School District and individual defendants Josh Brooks, John Flaherty and Dave Craig. The District Court dismissed all of the claims on the defendant's motion on the pleadings pursuant to Federal Rule Civil Procedure 12b-6. The standard today is not at issue. It is de novo and the same standard applies at the District Court that all material allegations are considered true and construed in the light most favorable to the Blanchards. Several issues initially on appeal in this matter have been settled either to the other. Why don't you just tell us what is still out there that you think we need to decide? The only two issues that I can see that are still out there are what are the parents, who are the proper plaintiffs here? In other words, may the son and the father be a proper pro pro plaintiff represented by the mom? In the pro se proceedings, that's correct. And I think that it's clearly settled by the Winkleman decision that they can be and that they are. The Winkleman decision was issued prior to and between the time that the District Court dismissed the case and this appeal. It settled that parents have an enforceable right to free appropriate public education for their child. It recognized the public policy of parents being active participants. It also settled a longstanding split of the circuits as to whether parents had substantive or just procedural rights under the Act. It found that they do have substantive rights to the free appropriate public education. The way the decision reads is this right is conjoined with the child's right to the free appropriate public education. The parent can enforce that right either in their own name or in the child's name. It does not matter. The same issue was raised in the Winkleman case, and the Court said it's not an issue anymore, because whether they can proceed pro se on behalf of their child or not. In the Winkleman decision, it said we don't have to discuss that issue. We've settled that the parents have the right. They can bring the case. That's precisely what's happened here. Cheryl Blanchard can bring the case under her name, her child's name, or both. It's irrelevant at this point based on Winkleman. Maybe it will. Go ahead. It leaves the question, which I think Winkleman says really doesn't matter and so elected not to address, but we apparently still have in front of us here, because only Cheryl signed the pleading, there's a question as to whether she can sign on behalf of anybody else. I don't know that it makes any substantive difference whatsoever, but the argument still appears to be there. I agree. The argument does appear to be there, and I don't think it makes a substantive difference or not either. It's this conjoined right she's seeking to enforce, the education. She has the right. Her child has the right. Granted, we have a long history that children can't be represented by their parents, and that's understood. But I think in this instance, the right, they can be represented. You know, I was trying to be practical here. I understand that now the son is represented, correct? In the other matter, he is represented as far as I know. Is he represented in this matter? He is not. Is he represented here on appeal? I represent him, I think, as I understand it, on appeal. I'm part of the pro bono panel. That's how I received the case. I understood that I just represent the Blanchards. And I think I would have to maybe limit it just to Cheryl Blanchard. But nonetheless, I think that Cheryl Blanchard has – I will still maintain that Cheryl Blanchard has a right to pursue this claim for her son. And I think there's a practical consideration, too. We're talking about a disabled child. And the complaint – and the argument here is he failed to sign the pleading, or that the parent – the other parent, Jerry Blanchard, failed to sign the pleading. I think that it's fairly easy to rectify the parent's absent signature. And the court should have granted some leniency to a pro se plaintiff proceeding in this matter on a very, I guess I would say, complex issue and doing a fine job in that representation. Well, let me ask you, does it matter if the father – well, if the wife can't represent the husband pro se, but the husband could go back and sign the papers, does all this really matter in the end? I don't think it does. I think that – and – And then we're left with whether the child, because of the minor capacity, can either be represented by the parents in these kind of cases or needs individual representation. I think that that is correct. And I think that the fact of the matter is what they're seeking is the education, which is this joined right between the parent and the child. Just because the child doesn't have his own individual counsel, it doesn't divide the right. They're still seeking the same remedy. They're seeking the appropriate education. They want what they're entitled to under the Act, an education at no cost. Seeking reimbursement for certain costs that were incurred when she had to remove Daniel from the school because she didn't feel like he was getting the education he was entitled to. She's pled that. She has that in her prayer for relief. She identifies unilateral placement and $3,300 in damages suffered. Can you – I mean, if we were to say the parents have the right to represent the child, that might have some broader reaching consequences in other proceedings in which the child's interest is at odds with the parent, for example. So if you were to prevail here, how would you write the rule vis-à-vis the child so that it wouldn't have collateral consequences in areas outside of IDEA? I understood. I think the way it should be written is that we're looking specifically limited to this right, to the IDEA and the free appropriate public education. And if it's written that way and if it's specifically limited so it can't be used in other matters precisely what you're talking about where you may have divergent rights or issues. And I think in this case it's so unique what they're seeking. I mean, just that it's this subjoined right. It's there. There is no disagreement between the parent and child. And the IDEA gives the parent so many procedural and substantive rights to pursue and to ensure that their child is getting the education they're entitled to that I think it would always be limited. It would be clearly limited, let's put it that way, to this unique law. What is the other issue that's still out there? The only other issue I can see that's still out there is service and whether service on the school district is proper. There's some issue about service on individuals. But service on the school district, again, there is good cause that she should have been given an extension of time. Did she ask for it? She did. In her opposition, again, we're talking about a pro se plaintiff who she asked for it when she is opposing the defendant's motion on the pleading. She said, look, if I got it wrong, give me more time and I'll get it right. And the judge said, no, you don't. You didn't comply. You don't get it. And so I would say, yes, she did ask for it. But does it matter? Is there a claim against the individuals, even if they were properly served under these statutes? The only one that there could be, based on your earlier decision about the Section 1983 Act, or that she doesn't have a claim there, there could be under the IDEA. I think that is still unsettled. The case that's repeatedly cited, too, is a lower court case. It provides a little guidance, the COV, Portland School District, which it does allow claims against individual defendants for IDEA violations. But that's a little difficult to see, because the damages that are properly recoverable under the IDEA Act are limited to those that are associated with education. So why would the individuals be appropriate defendants? I agree with you that her damages are limited. I just think for the sake of this appeal and for looking at how the district court dismissed it, she did state a claim sufficient against individuals for the IDEA. How do you have a claim with no remedy? How do you have a claim? That's true. I think that that remedy, though, is not yet. . . If she's looking for the compensatory damages, maybe, for whatever reason, instead of those being imposed on the district, somehow they're imposed on the individuals. I don't know. But I would say that that's a possibility. It's a possibility that deserves to go forward. It might very well be dismissed later. Well, let me just ask you. So you're saying now that the IDEA gives her a right against an individual? I think perhaps it does. I think it is unsettled. There's no authority that says that she has such a right, is there? The only. . . There's not. I don't think there's any authority that says she doesn't. You don't want to close the door because it isn't definitive that there can't be a claim against an individual. It's difficult to conceive exactly what it might consist of. Is that your position? Precisely. Or if you won on the 1983, then you might have some kind of claim. . . For more general damages. For acting in their individual and official capacity. All right? Thank you. One more thing to be clear. With the amendment on Monday in Blanchard 2, it becomes important now to make sure I understand the nature of the claim. Let me try this again. As amended, Blanchard 2 recognizes the possibility of a claim under the Rehabilitation Act and the ADA, but says the particular claim expressed in that case is one that's not cognizable because it's kind of a quasi-attorney's fees type claim. In this case, which I understand is a different time period, is the claim that was pled under those statutes exactly the same, or is there anything else in this case that might survive what caused the problem or the reason for the elimination of the claim in Blanchard 2? I would say that those claims do survive against the district because the damages she is seeking are different in this matter as opposed to that earlier appeal. As I understand, my reading of the amended decision is that her damages were, as you said, quasi-attorney's fee relief. She has claims for damages in this matter for the cost she incurred when she removed Daniel from school, took him home, and had to educate him at home. She's pled those damages. That's a different set of damages. This is not just lost income. Now, this is, I guess, for lack of a better word, she doesn't have the economic means to put him into a private school. If she did, she would have these clear damages that, okay, you paid for this private education. She took it upon herself to educate Daniel during this period that she removed him from the school. I think that's different from the lost profits she claimed in the earlier proceeding. Okay. Thank you. May it please the Court. My name is Diana Blakeney. And if there are more than one defendant, I represent them all. My position is, of course, that I represent the Morton School District, which is the sole defendant in the case and in the appeal. Well, let me ask you about that, just to begin with. At least the, and here I admit I'm lost in the names, but the person who gave the instructions or is supposed to have given the instructions as to who to serve, why wouldn't those, and saying serve these people, and I don't know what their functions were, but they were district employees, why wouldn't that instruction apply to the claim against him as well? I think it might have. So wouldn't that make him a defendant? It could. I mean, I think that's an argument that has not been made. I mean, they haven't made that argument. And I think in my briefing I'm saying, well, the process server, in fact, doesn't state that service was on the district. The process server says it was on two of the teachers and or I think one was a principal, so a teacher, an administrator, and the superintendent. The process server doesn't say the service was on the superintendent personally or on the superintendent on behalf of the district. One could argue that. Well, as I understood it, the process server, and I've now got the names which is which, is it Flaherty is the superintendent? Correct. And he's the person that's supposed to have given instructions as to who specifically should be given the service of process. According to the process server. According to the process server. Now, the process, and you acknowledge that the district is here, you're representing the district. So I guess the question becomes, are any of the individuals effectively served? And there's a whole separate question as to whether there's any valid claim against them. I'm just trying to figure out the cast of characters. At least for the superintendent, on the face of it, it appears to be if he's the person that gave instructions as to who should take the papers, then those instructions should apply to him as well as to the district. Well, I think the intent of the plaintiff has to be part of this analysis. Now, and I think the intent of the plaintiff was to serve, I think, two of the other individuals. Brooks and Craik. Craik and Brooks. Well, I thought Craik is kind of out at this point. Yeah. Yeah, I think both of them are out. But Flaherty and Brooks are at issue. I mean, if the process server says I served A, B, and C, I don't think it's the defendant. I mean, I don't think all of a sudden they can change their story and say, well, incidentally, we didn't really mean A, B, and C. We meant A, C, and C. Well, but the add-on is the district, and you're not disputing that the district's here. So it's, well. I'm saying if the district is here, then the principal is, or then the superintendent is. Well, you know, maybe it comes down, it's kind of amazing that we would be in the Ninth Circuit arguing over service when you have a pro se plaintiff who tried to serve these people, and the process server goes there and serves the three, and then they were or were not asked for extra time, and the district court doesn't give it. I mean, why isn't that an abuse of discretion? Well, I'll tell you why. Because this is Ms. Blanchard's seventh administrative contest with the district. She has gone up against them. She has won once. Others have been settled. This is a woman who sued earlier, had service problems with that case. Blanchard won, I'll call it, the one that. Did the district court say that? Yes. And the district court granted her an additional time. She then hired a process server. The process server was successful in serving two out of the four. Was that before the same district judges here? Yes. Judge Burgess. Judge Burgess. Yes. But a different appellate panel. So she succeeded in serving two people. She did not succeed in serving the other two. And, of course, this was a whole different set of teachers because over the seven different administrative actions, I believe the number is seven. I may be counting the current ones because there have been some subsequent to this matter. She's pretty sophisticated. She's pretty smart. She's pretty determined. She's had experience. These are teachers in a very small district. I mean, if you weigh equities, the equities weigh just as heavily on these teachers as it does for this woman who has successfully found a way to serve. You know, if she wants to sue her process server for doing an inept job, which he did, go do it, because he did her a great disservice in not doing it properly. But he didn't do it properly. She could have remedied that. She didn't. She could have remedied a lot of stuff, and she didn't. And her kid is still a minor. I mean, a lot of this stuff can come back. But she does it again and again and again and again. I don't know how many times we have to forgive her, her inability to do it right. I don't see in your brief an argument that says the district is not a party. I see an argument that says the individual defendants were properly defended, dismissed. I say in there, without waiving any argument we may have, let's assume for purposes of this appeal, the district is the correct party. So we've got the district for our purposes. For our purposes, I'd say it's the easiest. I think there's at least a colorable argument with regard to the superintendent who's supposed to have given instructions. And there's no doubt that the process server's paper claimed to have served the superintendent. He may lose out with the other two. But the superintendent gives instructions to go give the paper to that person over there. I'm having trouble figuring out what's not effective about that service as to the superintendent. Well, and I think you could make a good argument. But the question is, for proper service, shouldn't they have given him one for the district and one for himself? Yeah, but they gave him one for himself. What you're arguing is that they didn't, the process server said he served the three individuals. Well, Flaherty's one of the individuals. Flaherty said give the paper to that person. That person got the paper. How is that ineffective services to Flaherty? Yeah, and it may not be. So now we've got the district and Flaherty, again, just for our purposes. You may have some arguments. We could. We could. So now that we've gotten that side of the cast of characters, I don't know if you want to speak to the other side of the cast of characters or whether you identify any substantive issues that are still left for us, because I'm still having trouble figuring out what's on the table. Me, too. I think without question we have one plaintiff. I mean, no question. We have one plaintiff, and that is Mom. They don't contest it. But Mom has all the claims that she needs. Okay. Yes, she has the right to pursue. On behalf of the son, whether he's a party or not. Correct. Yeah, I mean, her interests subsume his, however you want to articulate it. But in terms of who's the plaintiff, she's it. She cannot represent her son, pro se, other than through herself and her personal interests in his education. ADA and Section 504 have been resolved. Raised on appeal are two issues, both of which have either been resolved, either been abandoned, because the ADA issue and the 504, there is no claim on appeal that any of the emotional distress issues, either the sons or the moms, you know, are at issue. They aren't at issue here, just as they weren't in Blanchard 1. Those issues got dismissed on Blanchard 1 not because Mom couldn't represent those interests, but because she didn't represent those interests on appeal. Do we still have a question as to whether, assuming that Mr. the principal Flaherty were here, whether there's an IDEA claim vis-à-vis an individual? Well, my position is there is not. You know, in his official capacity, you have him as the district, so it honestly doesn't matter. But at least as far as I know, an IDEA is certainly changing as we speak at the interpretations. There is no IDEA remedy. I mean, IDEA is federally funded. It's a funding statute. Did this case or the other Blanchard case go through the circuit court mediation process? Mine did not. This one did not. Okay. And although I'm in touch with the attorney representing on the Blanchard 1, I don't recall her mentioning it and I don't recall seeing it, although I think I've seen most of the record. Although the district does, I mean, the kids in school, I mean, they're talking all the time. They have administrative, you know, hearings all the time. There's always conversations going on. I think Mom has a mission, and this is America, and I respect her right to be on a mission. It's just we're in a changing area of law with a pro se plaintiff, which always makes it difficult to ascertain really what issues we're looking at. What do you think is still on the table? And let me define that because there could be some question. We have Blanchard 2 as amended, which seems to resolve or speak to many of the same claims. I'm not entirely sure because I haven't gone back to look at the complaint in that case. If there are claims here that are different such that the decision in Blanchard 2 doesn't speak to them. For our purposes in terms of what there's left to decide, what do you think there's left for us to decide beyond the issues we already talked about? I think the only thing left to decide is who's the plaintiff and who's the dependent, which are the two issues that counsel for the mother also identified. All right. I think that it's been fully argued. We appreciate the arguments from both counsel, particularly appreciate your participation in the pro bono program. It makes it much easier not only for the court but also for other counsels, so we appreciate that. It's just argued that Blanchard v. Morton School District is submitted. Our next argument this morning will be in the case of U.S. Bank v. Stern, Agee and Leach.
judges: McKeown, Clifton, Schwarzer